## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## CASE No.:

JANET GOMEZ,

       Plaintiff,

v.                                    JURY TRIAL DEMANDED

MIAMI-DADE COUNTY, Individually and in
their official capacities, DANIEL QUILES,
ERIC GARCIA and G. LORENTE,

       Defendants.

_____/

## COMPLAINT

Plaintiff, Janet Gomez by and through her undersigned attorneys, Vargas Gonzalez Hevia Baldwin, LLP, hereby file this Complaint against the Defendants, Miami-Dade County, individually and in their official capacities, Daniel Quiles, Eric Garcia and G. Lorente, alleging as follows:

## PRELIMINARY STATEMENT

1.    This is a civil rights action, in which Plaintiff seeks relief, vis-à-vis 42 U.S.C. § § 1983, 1986 and 1988, for injuries sustained due to the violations of plaintiff's civil rights, as enumerated within the Fourth, Fifth, Sixth and Fourteenth Amendments, as well as the laws of the State of Florida.

2.    The following claims arise from a February 17, 2019, incident, in which defendants, acting under color of state law, unlawfully arrested and detained plaintiff without a valid warrant, probable cause or other legal justification. Plaintiff was subsequently maliciously prosecuted for Resisting Arrest Without Violence, a Misdemeanor, and Noise/Produce Loud, Excessive/County

Ordinance, an Ordinance. As a result, the Plaintiff was wrongfully detained at the Turner Guilford Knight Correctional Facility for approximately eight and a half (8.5) hours. Her malicious prosecution persisted, until the criminal proceeding terminated in her favor on June 13, 2019, via the unconditional *nolle prosequi* of all charges.

3.      The above referenced acts caused the Plaintiff to be deprived of her liberty and to sustain various emotional, physical, and financial injuries.

4.      Plaintiff seek monetary damages (compensatory and punitive) against Defendants, an award of costs and attorneys' fees, and such other and further relief, as the Court may deem just and proper.

## JURISDICTION

5.      This action arises under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, under 42 U.S.C. §§ 1983, 1985, 1986 and 1988, as well as the laws of the State of Florida.

6.      The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of supplemental jurisdiction.

## VENUE

7.      Venue is laid within the Southern District of Florida, in that Defendant, Miami-Dade County, is located within and a substantial part of the events giving rise to the claims occurred within the boundaries of the Southern District. 28 U.S.C. § 1391 (b) and (c).

8.      Plaintiff, Janet Gomez, was at all times material herein, a federal agent, a resident of Miami-Dade County, Florida and a citizen of the United States.

9.      Defendant, Miami-Dade County ("County"), is created and authorized pursuant to the laws and Constitution of the State of Florida. Defendant County is authorized by law to maintain a Police Department, known as the Miami-Dade Police Department ("MDPD"), which serves as the

means by which Defendant County fulfills its policing function, and for which Defendant County is responsible and liable.

10.     At all times relevant hereto, Defendant County, acting through the MDPD, was responsible for the policy, practice, supervision, implementation, and conduct of all MDPD matters and was responsible for the appointment, hiring, training, supervision, discipline and retention and conduct of all MDPD personnel, including police officers, deputies, corporals, detectives, and supervisory officers as well as the individually named MDPD Defendants herein.

11.     In addition, at all times here relevant, Defendant County was responsible for enforcing the rules of the MDPD, and for ensuring that the MDPD personnel obey the laws of the United States and the State of Florida.

12.     Defendants, Daniel Quiles ("Quiles"), Eric Garcia ("Garcia") and G. Lorente ("Lorente"), were, at all relevant times herein, a deputies, officers, corporals, or sergeants employed by the MDPD and as such were acting in the capacity of an agent, servant and employee of defendant County. Defendants Quiles, Garcia and Lorente are being sued in their individual and official capacities.

## **FACTUAL CHARGES**

13.     In the late evening of February 16, 2019, the plaintiff, Ms. Gomez, was hosting a family get together at the Gomez family home, located at 15140 SW 153rd Place, Miami, Florida.

14.     At approximately 23:25 on February 16, 2019, Defendants, including Quiles, Garcia and Lorente, of the MDPD arrived at the Gomez family home and requested that plaintiff lower the music volume.

15.     Plaintiff immediately complied with defendants' request by instructing the band to stop playing.

16.     Shortly thereafter, at approximately 23:31:18, one of the defendants, including Quiles, Garcia and Lorente, threatened plaintiff by stating, "I see a federal agent going to jail tonight," ostensibly due to plaintiff's status as a federal agent employed by the United States Customs and Border Patrol.

17.     Further, at approximately 23:33:20, defendants, including Quiles, Garcia and Lorente, threatened plaintiff and her family that if defendants return, citations will be issued, regardless of probable cause to do so.

18.     Approximately one (1) hour later, defendants, including Quiles, Garcia and Lorente, returned to the Gomez family home in an agitated state and displaying a confrontational demeanor.

19.     Defendants, including Quiles, Garcia and Lorente, aggressively informed plaintiff that her music volume was in violation of the local noise ordinance, despite the fact that no music or noise, whatsoever, was audible from outside of plaintiff's home, a fact substantiated by defendants' Quiles' and Garcia's body worn cameras at the time of said encounter.

20.     Defendants, including Quiles, Garcia and Lorente, then made their intrusive presence known to plaintiff's guests by shouting gratuitous orders into the home.

21.     While standing just outside the home's door, defendants, including Quiles, Garcia and Lorente, observed a child in possession of an innocuous backpack and demanded that it be turned over for defendants to search and inspect.

22.     Thereafter, plaintiff stepped outside of her home to speak with defendants, including Quiles, Garcia and Lorente.

23.     Defendants, including Quiles, Garcia and Lorente, then demanded that Plaintiff produce her driver's license.

24.      In an effort to fully comply with defendants unwarranted demand, Plaintiff attempted to her home to retrieve her license.

25.     As plaintiff was closing the door to her home behind her, defendants, including Quiles, Garcia and Lorente, forcefully prevented her from doing by pulling the door open and inserting themselves between the door and the residence.

26.     Defendants, including Quiles, Garcia and Lorente, then began searching the backpack they had seized from the child, while simultaneously preventing the door from closing and any occupants from entering or leaving.

27.     Defendants, including Quiles, Garcia and Lorente, then began screaming commands at plaintiff and her invited guests.

28.     Defendants, including Quiles, Garcia and Lorente, then grabbed plaintiff and physically removed her from her home by grabbing plaintiff with their outstretched limbs.

29.     Upon physically removing plaintiff from her home without any legal reason therefor, defendants, including Quiles, Garcia and Lorente, proceeded to violently contort plaintiff's arms behind her back and rear handcuff her in an excessively tight fashion, which caused plaintiff to suffer substantial physical pain and injury to her arms, wrists and shoulders.

30.     At all material times herein, plaintiff did not disobey any commands by defendants, including Quiles, Garcia and Lorente, regardless of their legality.

31.     Defendants, including Quiles, Garcia and Lorente, then informed plaintiff that she was arrest and removed her against her will a local police outpost.

32.     Defendants, including Quiles, Garcia and Lorente, then ensured that a criminal prosecution was initiated against plaintiff, by forwarding false, misleading, incomplete and fabricated information, including defendants' accounts that plaintiff refused to comply with defendants' demand to produce her license, that plaintiff's actions caused defendants to fear for their physical safety, that defendants provided plaintiff with multiple opportunities to comply with their demands, that the music allegedly emanating from plaintiff's home, at approximately 00:30, was

in violation of a local noise ordinance to prosecutors and that plaintiff resisted defendants' attempts to issue her a citation.

33.     As proven by video recordings from defendants' own body worn cameras, and even further by the unconditional abandonment of the criminal charges, due to the clear lack of probable cause for the initial arrest or the prosecution that followed.

34.     Said video evidence conclusively proves that plaintiff never acted inappropriately during any interaction with defendants, including Quiles, Garcia and Lorente, and also that defendants were, at all times, without legal authority to stop, seize, detain, arrest, or otherwise execute process against plaintiff.

35.     Ms. Gomez was needlessly subjected to a false arrest and false imprisonment at the hands of the Defendants. She was unlawfully removed from her home and unlawfully arrested, all for trying to comply with the police requests whilst also trying to understand the reason for their presence.

36.     As a direct and proximate result of the acts of the named Defendants, herein, plaintiff sustained the following injuries and damages: deprivations of her rights pursuant to the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and the laws of the State of Florida, loss of liberty, reputational harm, pecuniary loss, physical injury, physical pain and suffering, as well as emotional and psychological trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, and anxiety.

## A DISTURBING CUSTOM OF MDPD OFFICIALS
## ABUSING THEIR POWER

37.     Prior to February 17, 2019, Miami-Dade County, by and through their police department, developed policies and customs exhibiting deliberate indifference to the constitutional rights of

their citizenry, that was the moving force behind the excessive force used against Janet Gomez. Evidence of Miami-Dade County's history of abuse is shown by the following examples:

38.     In 2015 the Miami-Dade Police Department falsely accused Deandre Charles of murdering New York City Rabbi Joseph Raskin.Charles reportedly spent nearly a year behind bars before prosecutors dropped the case against him. A Miami New Times investigation states that State Attorney Katherine Fernandez Rundle and Miami-Dade County Detective Michael Brajdic had knowledge of Charles' innocence and still continued with grand jury proceedings. To date, no Miami-Dade County officials have received any punishment.

39.     In a March 2017 incident, Miami-Dade County police officers William Baskins and Oliver Mayorga were caught on video violently arresting an unarmed suspect named Ephraim Casado. Local 10 News reports prosecutors dropped the case after it appeared officers "were less than truthful about the actual events that occurred during the incident." The Miami New Times reports that both officers are still working for the Miami-Dade Police Department and were never disciplined or charged in the case.

40.     In an August 2017 incident, the Miami Herald reports that Miami-Dade County police pointed their guns at real estate agent Robert Menard on his way to a Miami Dolphins preseason game for no reason other than the color of his skin. A civil rights lawsuit in federal court is ongoing on this incident;

41.     The same Miami Herald article reports that St. Thomas University student Thomas Payne was on his way to his second job coaching youth football, when a Miami-Dade County police officer, Carlos Angulo, pulled him over, pointed his gun at him, arrested him without reading his Miranda Rights, and kept him in a hot police car with no windows open for an extended period of time. A lawsuit is pending on this matter;

42.      In an April 2018 memorandum, it was revealed State Attorney Katherine Fernandez Rundle refused to charge Miami Dade Police Officer Eduardo Pares after he fatally shot Anthony Ford, an unarmed 27-year-old. CBS Miami reports that the incident sparked protests in Miami-Dade County and family members of Ford have said, "he had no weapon and was shot for no reason." Miami-Dade Police Director Juan Perez and Miami-Dade P.B.A. President Steadman Stahl publicly defended Officer Eduardo Pares' use of deadly force against the unarmed suspect;

43.      A scathing report by the ACLU of Florida in July 2018 found that black-Hispanics are disproportionately targeted by Miami-Dade Police Department and comprise four times more of the arrested population than their share of the county population. The same report stated that nuisance arrests are more prevalent in communities of color in Miami-Dade. Further, the July 2018 ACLU report shows Miami-Dade County sends the largest population of inmates to Florida state prisons and operates the largest jail system in the country;

44.      In October 2018, Miami-Dade police Sgt. Manuel Regueiro was arrested after being caught on tape unnecessarily punching a handcuffed suspected in the face. NBC6 reports that Sergeant Regueiro remains with the Miami-Dade County police force. This comes after a 2009 incident where a woman named Sarah Myles accused Regueuiro and other officers of fabricating evidence against her. She also said Regeuiro broke her wrist by tackling her, according to the Miami New Times. Her charges were dropped in 2011 and Sgt. Regeurio reportedly faced no discipline;

45.      In that same October 2018 incident, Officer Alexander Gonzales was charged with a felony for attempting to tamper or destroy the surveillance footage that captured Sgt. Regueiro's assault against the suspect. NBC6 reports that Officer Gonzalez remains with the Miami-Dade County police force;

46.      In 2018, the Miami-Dade County Commission voted to reinstate the citizens' Independent Review Panel for police oversight in light of the disturbing history of abuse by Miami Dade-

County through its police force, but Miami-Dade County Mayor Carlos Gimenez vetoed the move. Miami-Dade Police Department Director Juan Perez reportedly stated that the police oversight panel was "not needed;"

47.     In January of 2019 CBS Miami reported that a Miami-Dade police officer named Sgt. Gustavo De Los Rios was arrested for kicking a teenager named David Brown. Video evidence of the incident shows several officers arresting Brown when De Los Rios kicked him and dropped his knee on Brown's neck. CBS News reports De Los Rios was relieved of duty with pay. This attack follows a CBS report that De Los Rios was arrested for domestic abuse in an incident with his ex-wife in 2017. A 2015 Miami Herald report also shows that De Los Rios abused his power to find out about his ex-wife's travel plans but did not face discipline;

48.     In March 2019 a Miami-Dade police officer named Alejandro Giraldo was arrested for violently abusing an unarmed woman named Dyma Loving during an incident that has received national attention. ABC News reports that Officer Alejandro Giraldo pushed Loving against a fence before grabbing her by her neck and pulling her to ground. Giraldo then reportedly made false statements about what happened. Despite Officer Giraldo facing charges, Miami-Dade County Police Department Director Juan Perez called Giraldo's arrest 'disappointing,' according to ABC News;

49.     The pattern of actions by Defendant County, indicates that the Defendant officers and sergeants who violated Plaintiff's rights acted in accordance with policies that have been tacitly endorsed by Defendant County and other high-ranking officials.

50.     As a result of the aforementioned policies and customs, Defendant County's officers believed their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned but would instead be tolerated.

51.     The continued timeline of abuse and deliberate indifference to the rights of the citizenry by Defendant County by and through the MDPD, shows a corrective action was never initiated as a matter of policy.

## FIRST CAUSE OF ACTION
False Arrest Under Florida State Law Against
Defendants County, Quiles, Garcia and Lorente, each in their Individual and Official Capacities

52.      Plaintiff re-alleges and re-avers paragraphs 1 through 36 of this Complaint, as if fully set forth herein.

53.     Defendants unlawfully restrained Plaintiff without legal authority and against her will by removing her from her home, twisting her arms behind her back, handcuffing her, and confining Plaintiff.

54.     Defendants Quiles, Lorente and Garcia subjected Plaintiff to a false arrest, false imprisonment, and deprivation of liberty without a valid warrant or probable cause.

55.     Plaintiff was conscious of their confinement.

56.     Plaintiff did not consent to their confinement.

57.     Plaintiff's arrest and false imprisonment was not otherwise privileged.

58.     Defendants Quiles, Lorente and Garcia acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard for Plaintiff's rights.

59.     Alternatively, and to the extent that Defendants Quiles, Lorente and Garcia did not act in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard for Plaintiff's rights, Plaintiff alleges that Defendants Quiles, Lorente and Garcia acted within the scope of their employment and are liable in their official capacities.

60.     Defendant County, as the employer of the individually named defendants, are responsible for their wrongdoings, under the doctrines of *respondeat superior* and vicarious liability.

61.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

62.     This is a state law claim for damages in excess of the jurisdictional amount.

## SECOND CAUSE OF ACTION
False Imprisonment Under Florida State Law Against
Defendants County, Quiles and Garcia, each in their Individual and Official Capacities

63.     Plaintiff re-alleges and re-avers paragraphs 1 through 36 of this Complaint, as if fully set forth herein.

64.     Defendants unlawfully restrained Plaintiff without legal authority and against her will by removing her from her home, twisting her arms behind her back, handcuffing her, and confining Plaintiff.

65.     Defendants Quiles and Garcia subjected Plaintiff to a false arrest, false imprisonment, and deprivation of liberty without a valid warrant or probable cause.

66.     Plaintiff was conscious of their confinement.

67.     Plaintiff did not consent to their confinement.

68.     Plaintiff's arrest and false imprisonment was not otherwise privileged.

69.     Defendants Quiles, Garcia and Lorente, acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard for Plaintiff's rights.

70.     Alternatively, and to the extent that Defendants Quiles, Garcia and Lorente, did not act in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard for Plaintiff's rights, Plaintiff alleges that Defendants Quiles, Garcia and Lorente, acted within the scope of their employment and are liable in their official capacities.

71.     Defendant County, as employer of Defendants Quiles, Garcia and Lorente,, are responsible for their wrongdoings under the doctrines of *respondeat superior* and vicarious liability.

72.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

73.     This is a state law claim for damages in excess of the jurisdictional amount.

## THIRD CAUSE OF ACTION
Illegal Search and Seizure Under 42 U.S.C. § 1983 Against
Defendants Quiles, Garcia and Lorente in their Individual Capacities

74.     Plaintiff re-alleges and re-avers paragraphs 1 through 36 of this Complaint, as if fully set forth herein.

75.     The Defendants violated the Fourth Amendment to the U.S. Constitution by intentionally, wrongfully and illegally grabbing, seizing, handcuffing, arresting, detaining and imprisoning Plaintiff.

76.     Defendants deliberately restrained Plaintiff without legal authority and against her will by twisting her arms behind his back, rear handcuffing her and confining her to a jail cell.

77.     The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of Plaintiff was carried out without a valid warrant, without Plaintiff's consent, and without probable cause or reasonable suspicion.

78.     At all relevant times, Defendants acted forcibly in apprehending, arresting, and imprisoning Plaintiff.

79.     As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

## FOURTH CAUSE OF ACTION
Assault Under Florida State Law Against
Defendants County, Quiles and Garcia, each in their Individual and Official Capacities

80.     Plaintiff re-alleges and re-avers paragraphs 1 through 36 of this Complaint, as if fully set forth herein.

81.     At all relevant times, Defendants Quiles, Garcia and Lorente, caused plaintiff to fear for her physical well-being and safety and placed her in apprehension of immediate harmful and/or offensive physical contact.

82.     Defendants Quiles, Garcia and Lorente, intentionally engaged in and subjected Janet Gomez to immediate harmful and/or offensive physical contact and battered her without her consent or legal justification to do so.

83.     Defendants aggressively restrained Janet Gomez and unlawfully handcuffed her as she screamed her concerns over the way the entire matter had occurred.

84.     Defendants acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard for Teofilo Sr.'s rights.

85.     Alternatively, and to the extent that Defendants did not act in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard for Plaintiff's rights, Plaintiff alleges that Defendants acted within the scope of their employment and are liable in their official capacities.

86.     Defendants County, as employers of Defendants Quiles, Garcia and Lorente, are responsible for their wrongdoings under the doctrines of *respondeat superior* and vicarious liability.

87.     As a direct and proximate result of this breach, plaintiff sustained the damages hereinbefore alleged.

88.     This is a state law claim for damages in excess of the jurisdictional amount.

### FIFTH CAUSE OF ACTION
Battery Under Florida State Law Against
Defendants County, Quiles and Garcia, each in their Individual and Official Capacities

89.     Plaintiff re-alleges and re-avers paragraphs 1 through 36 of this Complaint, as if fully set forth herein.

90.     At all relevant times, Defendants caused plaintiff to fear for her physical well-being and safety and placed her in apprehension of immediate harmful and/or offensive physical contact.

91.     Defendants intentionally engaged in and subjected plaintiff to immediate harmful and/or offensive physical contact and battered her without her consent or legal justification to do so.

92.     Defendants aggressively restrained plaintiff and unlawfully handcuffed her as she screamed her concerns over the way the entire matter had occurred.

93.     Defendants acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard for plaintiff's rights.

94.     Alternatively, and to the extent that Defendants Quiles, Garcia and Lorente, did not act in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard for Plaintiff's rights, Plaintiff alleges that Defendants Quiles, Garcia and Lorente, acted within the scope of their employment and are liable in their official capacities.

95.     Defendants County, as employers of Defendants Quiles, Garcia and Lorente, are responsible for their wrongdoings under the doctrines of *respondeat superior* and vicarious liability.

96.     As a direct and proximate result of this breach, plaintiff sustained the damages hereinbefore alleged.

97.     This is a state law claim for damages in excess of the jurisdictional amount.

### SIXTH CAUSE OF ACTION
Malicious Prosecution Under Florida State Law
Against All Defendants

98.     Plaintiff re-alleges and re-avers paragraphs 1 through 36 of this Complaint, as if fully set forth herein.

99.     An original judicial proceeding was commenced, against Plaintiff, in the form of a criminal prosecution, under Court Case No. B19004338

100.     Defendants Quiles, Garcia and Lorente were the legal causes of the original judicial proceeding, as each forwarded spurious information to prosecutors, caused false police reports to be filed or offered false statements that wrongly accused Plaintiff of the crime of Resisting Officer Without Violence to His Person and of violating a local noise ordinance.

101.     The termination of the original judicial proceeding, via a *Nolle Prosequi*, constituted a bona fide termination of the proceeding in favor of Plaintiff, because said disposition was due solely to Plaintiff's innocence, regarding all charges.

102.     There was an absence of probable cause for the original proceeding against Plaintiff, as she had committed no crimes or violations of the law and defendants did not possess valid or admissible evidence to the contrary.

103.     Defendants Quiles, Garcia and Lorente lacked probable cause to believe Plaintiff was guilty or that the prosecution would succeed.

104.     Defendants Quiles, Garcia and Lorente acted with malice.

105.     In the absence of probable cause, malice may be inferred.

106.     Due to the intentional, willful and unlawful acts of Defendants Quiles, Garcia and Lorente Plaintiff suffered significant damages.

107.     Defendants, Quiles, Garcia and Lorente, acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard for Plaintiff's rights.

108.     Defendant County, as employer of the individual defendants, are responsible for their wrongdoings under the doctrines of *respondeat superior* and vicarious liability.

109.     As a direct and proximate result of this breach, Plaintiff sustained the damages hereinbefore alleged.

110.     This is a state law claim for damages in excess of the jurisdictional amount.

## **SEVENTH CAUSE OF ACTION**

Malicious Prosecution Under 42 U.S.C. § 1983 Against Defendants, Quiles, Garcia and Lorente, in their Individual Capacities

111.    Plaintiff re-alleges and re-avers paragraphs 1 through 36 of this Complaint, as if fully set forth herein.

112.    An original judicial proceeding was commenced, against Plaintiff, in the form of a criminal prosecution, under Court Case No. B19004338

113.    Defendants Quiles, Garcia and Lorente were the legal causes of the original judicial proceeding, as each forwarded spurious information to prosecutors, caused false police reports to be filed or offered false statements that wrongly accused Plaintiff of the crime of Resisting Officer Without Violence to His Person and of violating a local noise ordinance.

114.    The termination of the original judicial proceeding, via a *Nolle Prosequi*, constituted a bona fide termination of the proceeding in favor of Plaintiff, because said disposition was due solely to Plaintiff's innocence, regarding all charges.

115.    There was an absence of probable cause for the original proceeding.

116.    Defendants lacked probable cause to believe Plaintiff was guilty or that the prosecution would succeed.

117.    Defendants acted with malice.

118.    In the absence of probable cause, malice may be inferred.

119.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiff suffered significant damages.

120.    Accordingly, Defendants violated Plaintiff's Fourteenth Amendment rights by causing Plaintiff depriving her of her liberty after commencement of the legal process.

121.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

**EIGHTH CAUSE OF ACTION**

Abuse of Process Under Florida State Law
Against All Defendants

122.    Plaintiff re-alleges and re-avers paragraphs 1 through 36 of this Complaint, as if fully set forth herein.

123.    Defendants, Quiles, Garcia and Lorente made an illegal, improper or perverted use of the criminal process issued against Plaintiff.

124.    Defendants Quiles, Garcia and Lorente possessed ulterior motives or purposes in exercising such illegal, improper or perverted use of process.

125.    As a result of defendants' illegal, improper or perverted use of process, Plaintiff suffered damages.

126.     After Plaintiff's arraignment and release from custody, Defendants, Quiles, Garcia and Lorente knowingly submitted perjurious sworn statements and arrest reports with fabricated information against Plaintiff, or directed such acts to be committed, because of their desire to arrest, embarrass and humiliate a federal agent, in retaliation for some perceived slight or quarrel by or with the federal government, generally, or the U.S. Customs and Border Patrol, particularly.

127.    Defendants Quiles, Garcia and Lorente acted in bad faith, with malicious purpose, and in a manner exhibiting wanton and willful disregard for Plaintiff's rights.

128.    Defendant County, as employers of Defendants, Quiles, Garcia and Lorente, are responsible for their wrongdoings under the doctrines of *respondeat superior* and vicarious liability.

129.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

130.    This is a state law claim for damages in excess of the jurisdictional amount.

## **NINTH CAUSE OF ACTION**

Abuse of Process Under 42 U.S.C. § 1983 Against Individual Defendants, Quiles, Garcia and Lorente, in their Individual Capacities

131.    Plaintiff re-alleges and re-avers paragraphs 1 through 36 of this Complaint, as if fully set forth herein.

132.    Defendants made an illegal, improper or perverted use of process.

133.    Defendants possessed ulterior motives or purposes in exercising such illegal, improper or perverted use of process.

134.    As a result of defendants' illegal, improper or perverted use of process, Plaintiff suffered damages.

135.     After Plaintiff's arraignment and release from custody, Defendants, Quiles, Garcia and Lorente knowingly submitted perjurious sworn statements and arrest reports with fabricated information against Plaintiff, or directed such acts to be committed, because of their desire to arrest, embarrass and humiliate a federal agent in retaliation for some perceived slight or quarrel by or with the federal government, generally, or the U.S. Customs and Border Patrol, particularly.

136.    Defendants' actions compelled Plaintiff to continue to contest the false criminal charges against her until a *Nolle Prosequi* was filed on June 13 2019, terminating the prosecution against Plaintiff in her favor.

137.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

**TENTH CAUSE OF ACTION**
Negligent Hiring and Retention Under
Florida State Law Against Defendant County

138.    Plaintiff re-alleges and re-avers paragraphs 1 through 51 of this Complaint, as if fully set forth herein.

139.    Defendants owed a duty to those who may come into contact with its employee defendants to conduct an appropriate investigation, prior to hiring the individual MDPD defendants and failed to do so.

140.    An appropriate investigation would have revealed the unsuitability of the individual MDPD defendants for employment assignments requiring interaction with the public or crowd control, for employment as law enforcement officers or for employment in general.

141.    It was unreasonable for Defendants to hire the individual MDPD defendants in light of the information they knew or should have known.

142.    Defendants were required to properly and adequately retain and supervise the individual MDPD defendants to ensure that they remained fit for employment in a position requiring interaction members of the public, suitable for an assignment involving crowd control or as law enforcement officers and failed to do so.

143.    Defendants knew, or should have known, that the individual MDPD defendants were not fit for employment as law enforcement officers, to handle crowd control situations, or interact with members of the public and Defendants failed to take any action, such as investigation, reassignment, discipline, or discharge.

144.    Defendants placed the individual MDPD defendants in a position where they could inflict foreseeable harm.

145.    Defendants knew or should have known of its employee defendants' dangerous propensity for violating the individual civil rights of members of the public.

146.    Defendants failed to take reasonable measures in hiring and retaining its employee defendants that would have prevented the aforesaid injuries to Plaintiff.

147.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

148.    This is a state law claim for damages in excess of the jurisdictional amount.

### ELEVENTH CAUSE OF ACTION
Negligent Training and Supervision Under
Florida State Law Against Defendant County

149.    Plaintiff re-alleges and re-avers paragraphs 1 through 51 of this Complaint, as if fully set

forth herein.

150.    Defendants owed a duty to the those who may come into with the MDPD defendants, to

properly and adequately train the individual MDPD defendants, so that they would be able to

interact with members of the public, without violating their civil rights.

151.    Defendants were required to properly and adequately retain and supervise the individual

MDPD defendants to ensure that they remained fit for employment in a position requiring

interaction members of the public, suitable for an assignment involving crowd control or as law

enforcement officers and failed to do so.

152.    Defendants knew, or should have known, that the individual MDPD defendants were not

fit for employment as law enforcement officers, or in general, particularly not to handle crowd

control situations, or to interact with members of the public, and Defendants failed to take any

action, such as an investigation, reassignment, discipline, or discharge.

153.    Defendants placed the individual MDPD defendants in a position where they could inflict

foreseeable harm.

154.    Defendants knew or should have known of its employee defendants' propensity for

violating the individual rights granted under the United States Constitution and the laws of the

State of Florida, prior to the injuries incurred by Plaintiff.

155.    Defendants failed to take reasonable measures in training and supervising its employee

defendants that would have prevented the aforesaid injuries to Plaintiff.

156.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.

157.    This is a state law claim for damages in excess of the jurisdictional amount.


**TWELFTH CAUSE OF ACTION**
Governmental "*Monell*" Liability Under
42 U.S.C. § 1983 Against Defendant County

158.    Plaintiff re-alleges and re-avers paragraphs 1 through 51 of this Complaint, as if fully set forth herein.

159.    Defendants maintained official or unofficial policies, customs or practices that caused Plaintiff to be deprived of their Constitutional rights.

160.    Defendants were aware of the individual MDPD defendants' propensities to arrest individuals without probable cause, to apply excessive force during arrests, and to maliciously prosecute members of the citizenry.

161.    Defendants were aware and put on notice of the individual MDPD defendants' unlawful propensities due to prior lawsuits, psychological exams, civilian complaints, internal performance reviews, news reports, internal whistleblowers, or their own personal observations.

162.    Despite defendants' knowledge regarding the individual MDPD defendants' severe deficiencies and unsuitability for employment as law enforcement officers, especially in situations involving interactions with members of the public, defendants have demonstrated their deliberate indifference towards the rights of those who may come into contact with the individual MDPD defendants by assigning them to interact with members of the public in a crowd control situation without first correcting their violative predilections.

163.    Defendants' failure to take any action to correct the Constitutionally offensive behavior of the individual MDPD defendants is tantamount to their tacit approval or their deliberate indifference towards such misconduct.

164.    Defendants have failed to properly train the individual MDPD defendants to properly interact with members of the public, as it is obvious that the MDPD defendants cannot simultaneously enforce the law while refraining from violating the Constitutional rights of those they come into contact with.

165.    Defendants have failed to train the individual MDPD defendants to properly identify the presence of probable cause, to apply only an amount of force that is reasonable under the circumstances and to distinguish between protected and unprotected speech, as clearly evidenced by their interactions with Plaintiff.

166.    The failure to train the MDPD defendants regarding such basic civil rights, coupled with assigning the individual MDPD defendants to interact with members of the public, virtually assures that Constitutional violations will occur and demonstrates defendants' deliberate indifference towards the rights of those who may come into contact with the individual MDPD defendants.

167.    Defendants' failure to train is obvious in light of the individual MDPD defendants' gross and egregious violations of Plaintiff's Fourth and Fourteenth Amendment rights.

168.    Defendants disregarded known or obvious consequences of hiring the individual MDPD defendants to such an extent that it demonstrated defendants' deliberate indifference to the rights of those who may come into contact with the individual MDPD defendants.

169.    Defendants knew, or should have known, that the individual MDPD defendants were not suitable to be hired as law enforcement officers, because of their prior work histories,

psychological makeups, general dispositions, references, background checks and their own personal interactions with the individual MDPD defendants.

170.    Despite being aware that the individual MDPD defendants would be highly likely to violate the Constitutional rights of those they come into contact with, defendants decided to hire them, regardless.

171.    Defendants' employees' illegal practices are so consistent and widespread that they constitute customs or usages of which a supervising policymaker must have been aware of and took no action to correct.

172.    Defendants and their policymakers failed to provide adequate training or supervision to subordinates to such an extent that it is tantamount to their deliberate indifference towards the rights of those who come into contact with the individual MDPD defendants.

173.    Defendants' employees engaged in such egregious and flagrant violations of Plaintiff's Constitutional rights that the need for enhanced supervision and training is obvious and therefore tantamount to a display of deliberate indifference by Defendants and their policymakers towards the rights of individuals who come into contact with defendants' employees.

174.    Defendants' conduct violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

175.    As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages hereinbefore alleged.


**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants, jointly and severally, as follows:

a)    In favor of Plaintiff in an amount to be determined by a jury for each of Plaintiff's causes of action;

b)      Awarding Plaintiff punitive damages in an amount to be determined by a jury;

c)      Awarding Plaintiff compensatory damages in an amount to be determined by a jury;

d)      Awarding Plaintiff reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; and

**e)**      Granting such other and further relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury.

Dated:  July 24, 2020

Respectfully submitted,

<u>/s/ *Anthony C. Hevia*            </u>
**Anthony C. Hevia, Esq.**
Fla. Bar Number: 41148
**Vargas Gonzalez Hevia Baldwin, LLP**
*Attorneys for Ms. Gomez*
815 Ponce De Leon Blvd, Third Floor
Coral Gables, Florida
T: (305) 631-2528
F: (305) 631-2741
Anthony@VargasGonzalez.com
Service: SArrese@VargasGonzalez.com