**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 20-cv-23069-COOKE/GOODMAN**

JANET GOMEZ,

Plaintiff,

v.

MIAMI-DADE COUNTY, *et al.*,

Defendants.
_________________________________/

# ORDER ON DEFENDANTS' MOTION TO DISMISS

THIS MATTER is before the Court on Defendants' motion to dismiss the amended complaint. ECF No. 30. Plaintiff has opposed this motion. ECF No. 31. Having considered the parties' arguments and the relevant legal authorities, the Court will **GRANT** the motion and **DISMISS** this case **with prejudice**.

## FACTUAL BACKGROUND[1]

This case arises out of a dispute that took place on the night of February 16, 2019, and into the early morning of February 17, 2019. Plaintiff Janet Gomez ("Plaintiff" or "Ms. Gomez") is a federal agent of the United States and a resident of Miami-Dade County, Florida. ECF No. 24 ¶ 8. On the evening of February 16, 2019, Ms. Gomez was hosting a family gathering at her home in the Country Walk neighborhood. *Id.* ¶ 13.

[1] The amended complaint refers to video footage taken on the night of the incident in question from the body cameras of the officers. *See* ECF No. 24 ¶¶ 25, 48–49. Similarly, the complaint cites to timestamps in these videos. *See id.* ¶¶ 22–23. Defendants conventionally filed these videos along with their motion to dismiss, and Plaintiff has not disputed their authenticity. Accordingly, the Court will review these videos as part of the motion to dismiss. *See Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018) (courts may consider documents when they are "referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity"). The Court has received two videos from Officer Giovanni Lorente's camera, one from Officer Daniel Quiles' camera, and one from Officer Eric Garcia's camera. The Court will cite these respectively as follows: G.L. Vid., G.L. Vid. II, D.Q. Vid., E.G. Vid. The Court will pin cite to the timestamps visible in the top, left-hand corner of these videos.

Around 11:25pm on February 16, 2019, Officer Giovanni Lorente ("Officer Lorente") of the Miami-Dade Police Department ("MDPD") arrived at Ms. Gomez's home. *Id.* ¶ 19. Officer Lorente stated he was responding to a noise complaint from one of Ms. Gomez's neighbors. *Id.* ¶ 20. Video evidence shows that as Officer Lorente is standing on the street outside of Ms. Gomez's home, music is audible on his body camera. G.L. Vid. at 23:30:20–23:30:30. The video shows Officer Lorente asks Ms. Gomez to lower the music and she responds that she has already asked someone to do so. *Id.* But the music is still audible from where Officer Lorente and Ms. Gomez are speaking. *Id.* Ms. Gomez states that "there's a band here," and Officer Lorente goes on to explain that someone has complained about the noise, there's a county noise ordinance, and she could get a citation if she does not lower the music. *Id.* at 23:30:30–23:30:38. Ms. Gomez tells Officer Lorente that she "totally understand[s]" and that she is also an officer with the federal government's U.S. Customs and Border Protection. *Id.* at 23:30:38–23:30:43. The exchange continues for several seconds as Officer Lorente asks Ms. Gomez to comply with his request, and she says she has already asked her brother to have the music turned down, but she will go and ask herself that it be turned down. *Id.* at 23:30:50–23:31:09. Ms. Gomez appears to walk towards her home and leaves the line of vision of the camera. *Id.* at 23:31:10–23:31:14. Officer Lorente then says, "I see a customs agent going to jail tonight." *Id.* at 23:31:15–23:31:18. Throughout the exchange, the music remains audible on camera.

A second video for Officer Lorente's body camera begins a couple of minutes later. G.L. Vid. II at 23:32:52. The music is still audible in the video. A man approaches the camera and tells Officer Lorente he believes that they have until 11:00pm to play music, but Officer Lorente tells him he is mistaken. *Id.* at 23:32:52–23:33:03. The man says he "can lower the music a little bit," and Officer Lorente responds that if officers need to come back to the home, "someone is going to get cited." *Id.* at 23:33:08–23:33:15. The man responds "alright." *Id.* at 23:33:16. Ms. Gomez now appears next to the man, and Officer Lorente repeats that if officers need to return to the home, someone will get cited. *Id.* at 23:33:18–23:33:24. Ms. Gomez gives Officer Lorente a thumbs up and says "okay." *Id.* at 23:33:23–23:33:29. Officer Lorente thanks Ms. Gomez and the man for their cooperation. *Id.*

Approximately an hour later, in the early morning of February 17, 2019, Officers Daniel Quiles ("Officer Quiles") and Eric Garcia ("Officer Garcia") arrived at Ms. Gomez's

home.[2] ECF No. 24 ¶ 24. Officer Garcia's body camera shows him approaching Ms. Gomez's home around 12:37am on February 17, 2019. E.G. Vid. at 00:37:31–00:37:35. Music is audible in the video as he approaches the driveway and becomes increasingly louder as he nears the home. *Id.* at 00:37:31–00:37:35. Once he reaches the front door, Officer Garcia knocks on the door. *Id.* at 00:37:50–00:38:15. Getting no immediate response, he peers through a window by the door, and calls out "open up." *Id.* Officer Quiles' body camera shows him approaching the home as Officer Garcia first knocks on the door, and then shows him standing a couple of feet from the door, near Officer Garcia. D.Q. Vid. at 00:37:50–00:38:15.[3] Music is audible on video from both officers' body cameras.

The body camera videos show the following:

As Officer Quiles is standing by the entrance to Ms. Gomez's home, Officer Garcia approaches the door a second time. Someone appears to open the door from the inside of the home, and Officer Garcia pulls it open. E.G. Vid. at 00:38:18–00:38:30. Two young men are standing there. *Id.* Officer Garcia, while still standing outside the house, asks for the backpack of one of the young men, because he says he believes he saw weed. *Id.* Officer Garcia takes the backpack and asks the young man where the weed is. *Id.* The young man says there is no weed and tells Officer Garcia to check the backpack. *Id.* Officer Garcia and Officer Quiles remain outside the home with the backpack.

As the officers are speaking to the two young men, Ms. Gomez approaches the door from the inside of the house. E.G. Vid. at 00:38:35–00:38:39. As she approaches, Officer Garcia asks who owns the house and Ms. Gomez identifies herself as the owner. *Id.* While Ms. Gomez is still inside the home, Officer Garcia tells her they are going to "need to turn the music off." *Id.* at 00:38:39–00:38:48. Ms. Gomez replies, "we lowered it," and asks the officers if they can please step outside. *Id.* The officers remain outside, Ms. Gomez steps outside the home and closes the door behind her. *Id.* She begins to speak to the officers just outside her front door.

[2] The parties appear to dispute whether Officer Lorente returned to the home with Officers Garcia and Quiles, but the parties appear to agree that whether Officer Lorente returned to Ms. Gomez's home, he was not in the immediate vicinity during Ms. Gomez's arrest.

[3] The videos from Officer Garcia and Officer Quiles' body cameras show substantially the same events with the same timestamps, albeit from slightly different angles.

Ms. Gomez asks the officers, "what seems to be the problem?" E.G. Vid. at 00:38:48–00:39:02. She explains that there is a party going on for a "special occasion." *Id.* Officer Garcia congratulates her. *Id.* However, he explains that they have to turn the music off. *Id.* at 00:39:04–00:39:08. "For what reason?" asks Ms. Gomez. *Id.* "It's too loud. There's a noise ordinance," Officer Quiles interjects. D.Q. Vid. at 00:39:08–00:39:12. Ms. Gomez explains that "they" came earlier and told her to lower the music, which she did, and that "the band even left." E.G. Vid. at 00:39:11–00:39:24. The officers ask Ms. Gomez who came earlier, and she confirms it was the other police officers. *Id.* Officer Garcia asks Ms. Gomez to confirm that this is the second time someone comes to her home to ask her to turn down the music, which she confirms. *Id.*

Officer Garcia tells Ms. Gomez that they are going to cite her and ask for her identification. E.G. Vid. at 00:39:22–00:39:33. "Sure, no problem. Hold on one second," Ms. Gomez says, and goes back into her home. *Id.* As she leaves, she pulls the door behind her, *id.*, but Officer Quiles props it open before it shuts, *id.* at 00:39:34–00:39:46. While Ms. Gomez looks for her identification, Officer Garcia searches the backpack he still has in his hands. *Id.*

As the officers wait outside the open door, a man approaches from inside the house, he greets the officers, and pulls the door towards him, leaving it ajar and sticking his head out to speak to the officers. D.Q. Vid. at 00:39:42–00:39:58. "Open the door," says Officer Garcia, putting his hand on the door and propping it open. *Id.* The man asks why, and Officer Garcia replies, because he says so. *Id.* "You don't have a search warrant," says the man, and begins arguing with Officer Garcia. *Id.*

Ms. Gomez returns to the door with a purse in hand, as Officer Garcia and the man are arguing. D.Q. Vid. at 00:39:58–00:40:16. Ms. Gomez tells the officers they are not allowed into her home and they tell her they are not going inside. *Id.* Ms. Gomez tells Officer Garcia she wants to close the door, but Officer Garcia says no. *Id.* Officer Garcia stands in front of Ms. Gomez, between her and the door, keeping her from closing it. *Id.* Ms. Gomez tells Officer Garcia to step away from the door, but he refuses. *Id.* at 00:40:20–00:40:30. Other individuals start converging around the doorway on the inside of the house, behind Ms. Gomez, and start arguing with the officers. *Id.* at 00:40:30–00:40:45. Officer Garcia asks if there is weed inside the house and says he smells it. *Id.* at 00:40:45–00:41:02. Someone from

inside the house yells that the smell is coming from across the street. *Id.* The arguing continues as individuals behind Ms. Gomez continue interjecting. *Id.*

Again, Officer Garcia asks Ms. Gomez for her identification. D.Q. Vid. at 00:41:02–00:41:38. Ms. Gomez says she will comply with the officer's order if he steps away from the door. *Id.* Officer Garcia refuses, and this back-and-forth continues for several seconds—Ms. Gomez keeps saying she will provide her identification only if Officer Garcia steps away from the door, and Officer Garcia insists on her providing her identification immediately. *Id.* Finally, Officer Garcia tells Ms. Gomez that if she does not give him her identification, "you are going to go to jail." *Id.* at 00:41:38–00:41:39. "Do what you gotta do," Ms. Gomez responds, and Officer Garcia holds her by the arm, later letting her go. *Id.* at 00:41:39–00:41:42. Other individuals start grabbing Ms. Gomez and pulling her back into the house as she repeats, "let him, let him." E.G. Vid. at 00:41:42–00:41:46.

"Everybody needs to go inside," says Officer Garcia. D.Q. Vid. at 00:41:46–00:42:12. Officer Quiles holds Ms. Gomez by the wrist, moves her outside the house, and lets go of her wrist. *Id.* Officer Garcia then proceeds to place handcuffs on Ms. Gomez, and arrest her, as Officer Quiles assists him. E.G. Vid. at 00:42:18–00:42:27.

## PROCEDURAL HISTORY

Plaintiff Janet Gomez filed this action on July 24, 2020. ECF No. 1. On October 22, 2020, Defendants Miami-Dade County and Officers Garcia, Lorente, and Quiles filed separate motions to dismiss. *See* ECF Nos. 19, 20.

On November 6, 2020, Plaintiff filed the first amended complaint, now the operative complaint. ECF No. 24. The amended complaint sets forth 20 counts against Defendants as follows: a First Amendment retaliation claim based on allegations Defendants retaliated against Plaintiff because of her chosen profession as a federal agent (Count I); a claim for an illegal search and seizure based on allegations Defendants unlawfully detained and searched Plaintiff (Count II); a claim for false arrest based on similar allegations under both federal (Count III) and Florida (Count V) law; a claim for false imprisonment based on similar allegations under both federal (Count IV) and Florida (Count VI) law; claims for assault (Count VII) and battery (Count VIII) based on allegations Defendants subjected Plaintiff to harmful contact; a claim that Defendants applied excessive force in arresting Plaintiff (Count IX); claims for malicious prosecution under federal (Count XI) and Florida (Count X) law;

claims for abuse of process under federal (Count XIII) and Florida (XII) law; claims for denial of due process (Count XIV) and deprivation of equal protection (Count XV) under federal law; claims for a conspiracy to interfere with civil rights (Count XVI) and for a failure to intervene (Count XVII) under federal law; claims for negligent hiring and retention under Florida law (Count XVIII); a claim for negligent training and supervision under Florida law (Count XIX); and a claim for *Monnell* liability under federal law (Count XX).

On November 20, 2020, Defendants moved to dismiss the amended complaint. ECF No. 30. Defendants argue that: (1) the official capacity claims are redundant of the claims against the county; (2) the officers are entitled to qualified immunity from the federal claims; (3) the officers are entitled to immunity from most of the state law claims; (4) the amended complaint fails to state a claim for municipal liability. Plaintiff opposed the motion, ECF No. 31, but failed to address most of Defendants' arguments for dismissal. Defendants argue on reply that the Court should also deem abandoned the claims Plaintiff chose not to address in her response. ECF No. 32.

## LEGAL STANDARDS

On a motion to dismiss, the Court "accept[s] the factual allegations supporting a claim as true and draw[s] all reasonable inferences in favor of the nonmovant." *Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1275 (11th Cir. 2018). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Courts may consider documents attached to a motion to dismiss where the document is central to the plaintiff's claim, and its authenticity is undisputed. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). "[W]hen the exhibits [attached to a pleading] contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007). Where video footage "obviously contradicts [the nonmovant's] version of the facts, [courts] accept the video's depiction instead of [the nonmovant's] account," *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1315 (11th Cir. 2010), and "view[ ] the facts in the light depicted by the videotape," *Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

## DISCUSSION

As a threshold matter, the Court finds Plaintiff has abandoned several claims raised in the amended complaint but not addressed in opposition to the motion to dismiss. The Court also finds that those claims that Plaintiff does defend also warrant dismissal. Because Plaintiff has already amended her pleadings to no avail, the Court will dismiss this action with prejudice.

### I. Plaintiff abandons most of her claims by not defending them when opposing the motion to dismiss.

"[A] claim may be considered abandoned when the allegation is included in the plaintiff's complaint, but [the plaintiff] fails to present any argument concerning this claim to the district court." *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (citation omitted); *see also Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("when a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned") (citation omitted). Courts in this district regularly deem claims abandoned where a plaintiff raises the claim in a complaint, but then fails to defend it in opposition to a motion to dismiss. *See, e.g.*, *Fontainebleau Fla. Hotel, LLC v. S. Fla. Hotel & Culinary Emps. Welfare Fund*, 508 F. Supp. 3d 1239, 1246 (S.D. Fla. 2020); *GolTV, Inc. v. Fox Sports Latin Am. Ltd.*, 277 F. Supp. 3d 1301, 1311 n.7 (S.D. Fla. 2017); *Haasbroek v. Princess Cruise Lines, Ltd.*, 286 F. Supp. 3d 1352, 1358 n.4 (S.D. Fla. 2017); *Miadeco Corp. v. Miami-Dade Cty.*, 249 F. Supp. 3d 1296, 1306 (S.D. Fla. 2017), *aff'd in relevant part*, *vacated in part sub nom. Checker Cab Operators, Inc. v. Miami-Dade Cty.*, 899 F.3d 908 (11th Cir. 2018).

Here, Plaintiff filed an amended complaint alleging 20 claims against Defendants Miami-Dade County and Officers Garcia, Lorente, and Quiles. ECF No. 24. Defendants filed a 37-page motion to dismiss, detailing why all of Plaintiff's 20 claims should be dismissed. ECF No. 30. Plaintiff filed a threadbare 7-page response to the motion to dismiss, opposing a fraction of Defendants' arguments. ECF No. 31. Based on Plaintiff's nonresponsiveness to most of Defendants' arguments for dismissal, *see* ECF No. 32 at 1–2, the Court will consider the following arguments conceded:

Plaintiff cannot state a claim for a First Amendment violation (Count I). The officers are entitled to immunity from the state law claims for false arrest (Count V) and false

imprisonment (Count VI). Plaintiff has not sufficiently pled the state law assault (Count VII) and battery (Count VIII) claims, and the federal excessive force claim (Count IX), and these claims do not survive independent of the federal false arrest claim. The officers are entitled to immunity from state law claims for malicious prosecution (Count X) and abuse of process (Count XII). Plaintiff cannot state a claim for abuse of process (Counts XII and XIII). Plaintiff cannot state a claim for a violation of due process (Count XIV), equal protection (Count XV), conspiracy (Count XVI), or failure to intervene (Count XVII). Plaintiff cannot state a municipal liability claim based on policy, custom, or failure to train (Count XX).

**II. Plaintiff's outstanding claims warrant dismissal.**

Plaintiff's outstanding claims concern the allegedly illegal search and seizure, false arrest, false imprisonment, and malicious prosecution (Counts II, III, IV, and XI). These four claims are brought under federal law. Plaintiff also alleges two remaining claims under Florida law, for negligent hiring and retention (Count XVIII) and negligent training and supervision (Count XIX). For the reasons stated below, the Court will dismiss all these outstanding claims.[4]

**A. The officers have established qualified immunity as to the federal claims.**

Defendants have established qualified immunity as to the outstanding federal claims. "To invoke qualified immunity, a public official must first demonstrate that [they were] acting within the scope of [their] discretionary authority when the challenged action occurred." *Patel v. City of Madison, Alabama*, 959 F.3d 1330, 1338 (11th Cir. 2020) (citation omitted). An officer acts within the scope of their discretionary authority when "(a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within [their] power to utilize." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir.

---

[4] The parties dispute whether the official capacity claims against the officers are redundant. The Court finds that pursuant to Supreme Court and Eleventh Circuit precedent, these claims are redundant and should be dismissed against the officers. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly.") (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). These cases remain good law, *see Pestana v. Miami-Dade Cty. Bd. of Commissioners*, 282 F. Supp. 3d 1284, 1288 (S.D. Fla. 2017), and Plaintiff has provided no reason to disregard them.

2004). Once an officer invokes qualified immunity, the burden shifts to a plaintiff to negate it. *Patel*, 959 F.3d at 1338. A plaintiff may meet that burden by making a two-part showing that their allegations (1) establish a constitutional violation that was (2) clearly established at the time of the conduct. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010).

Where a law enforcement officer shows they had probable cause for a search or arrest, they are be entitled to qualified immunity on claims of illegal search and seizure, false arrest, false imprisonment, and malicious prosecution. *See Hardigree v. Lofton*, 992 F.3d 1216, 1225 (11th Cir. 2021) (probable cause barred unlawful search and seizure claim); *Case v. Eslinger*, 555 F.3d 1317, 1326 (11th Cir. 2009) (same, for false arrest); *Helm v. Rainbow City, Alabama*, 989 F.3d 1265, 1279 (11th Cir. 2021) (same, for false imprisonment); *Manners v. Cannella*, 891 F.3d 959, 973 (11th Cir. 2018) (same, for malicious prosecution). "Probable cause exists where the facts within the collective knowledge of law enforcement officials, derived from reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that a criminal offense has been or is being committed." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010). Where a warrantless arrest occurs in a house, the arrest "violates the Fourth Amendment unless the arresting officer had probable cause to make the arrest *and* either consent to enter or exigent circumstances demanding that the officer enter the home without a warrant." *Moore v. Pederson*, 806 F.3d 1036, 1043 (11th Cir. 2015) (citation omitted). Because the officers here were acting within the scope of their authority, and Defendants have demonstrated probable cause for Ms. Gomez's arrest—as well as Ms. Gomez's consent for the arrest—the Court finds Counts II, III, IV, and XI are barred by qualified immunity, and will dismiss these claims.

**a. The officers were acting within the scope of their authority.**

Defendants argue that the officers were acting within their discretionary authority because (1) searches, seizures, and arrests are part of an officer's general job duties which (2) officers have the power to effect. ECF No. 32 at 4–6. The Court agrees. The officers here were responding to a noise complaint and investigating that complaint at Ms. Gomez's home. Responding to and investigating such complaints are part of an officer's duties. *See Hinson v. Bias*, 927 F.3d 1103, 1116 (11th Cir. 2019), *cert. denied*, 141 S. Ct. 233 (2020) ("police officers conducting arrest and investigative functions" were acting within discretionary authority). In her opposition, Ms. Gomez argues that Defendants have merely stated the officers were acting

within their authority "in a purely conclusory fashion" and "have offered no support for their unfounded contention[s]." ECF No. 31 at 3. But this is incorrect. First, Ms. Gomez herself alleges that the officers were acting in their capacity as "agents, servants, and employees of defendant County." ECF No. 24 ¶ 12. Moreover, the videos present ample evidence that the officers were investigating a noise complaint. Thus, the Court finds that the officers have shown they were acting within the scope of their discretionary authority.

**b. The officers have established probable cause.**

Defendants next argue that the officers had probable cause to arrest Ms. Gomez for two independent infractions. ECF No. 30 at 16–17. First, the officers had probable cause to arrest Ms. Gomez for a violation of a local noise ordinance, Miami-Dade Cty. Code § 21-28, which prohibits "the producing or reproducing of sound in such manner as to disturb the peace, quiet and comfort of the neighboring inhabitants." Second, the officers had probable cause to arrest Ms. Gomez for resisting an officer without violence under Fla. Stat. § 843.02, which requires showing "(1) [an] officer was engaged in the lawful execution of a legal duty; and (2) the defendant's action, by his words, conduct, or a combination thereof, constituted obstruction or resistance of that lawful duty." *C.E.L. v. State*, 24 So. 3d 1181, 1185–86 (Fla. 2009).

The Court agrees Defendants have established probable cause under either theory. First, the video evidence here shows that Ms. Gomez's music was audible from outside of her home. Additionally, before Officers Garcia and Quiles arrested Ms. Gomez, she disclosed to them that this was not the first time that officers had been called to her home for a noise complaint that evening. Ms. Gomez contends that this argument is "beyond absurd" because the video evidence does not show the music is audible from "100 feet away." ECF No. 31 at 5. As Defendants point out, however, showing that music was audible from 100 feet from the building is required to make out a prima facie violation of the noise ordinance, but not required to meet a probable cause standard. ECF No. 32 at 7. Accordingly, the Court finds the video evidence establishes the officers had sufficient probable cause of a violation of the noise ordinance. Second, the Court also finds sufficient evidence of probable cause of a violation of the Florida statute. According to the video evidence, the officers told Ms. Gomez they were going to arrest her and that they needed her identification. Ms. Gomez repeatedly refused to give the officers her identification and conditioned her compliance on having them

move away from her door. The Court finds this sufficient to establish probable cause of a violation of Fla. Stat. § 843.02, and Ms. Gomez does not appear to contest this argument.

**c. Ms. Gomez sufficiently consented to the arrest.**

Because Ms. Gomez's arrest took place in her doorway, Defendants must show she consented to the arrest or that there were exigent circumstances leading to this arrest. Defendants concede that there were no exigent circumstances but argue that Ms. Gomez gave verbal consent when she told the officers to "do what you gotta do," and then—as the officers prepared to arrest Ms. Gomez—told those around her to "let him, let him." The Court agrees Defendants have sufficiently established consent, and again, Plaintiff does not appear to contest this.

**B. Plaintiff has not sufficiently pled the state law claims for negligent hiring, retention, training, and supervision.**

Finally, the Court addresses Plaintiff's claims for negligent hiring, retention, training, and supervision under Florida law, Counts XVIII and XIX. Defendants argue these claims should be dismissed on account of Plaintiff's deficient pleading under *Iqbal* and *Twombly*, because the claims amount to little more than recitals of the elements of a cause of action, supported by conclusory statements. ECF No. 30 at 36–37. The Court agrees. Plaintiff does not support either of these claims with any facts specific to any of the officers in this case. In fact, in her opposition, Ms. Gomez refers to no allegations in the amended complaint to support her claim. Instead, she appears to be referring to a defendant in a different action, presumably on account of an error by counsel. Accordingly, the Court will dismiss these claims as well.

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** the motion to dismiss the amended complaint. Because Plaintiff has already amended her complaint to no avail, the Court will **DISMISS** the amended complaint **with prejudice**. The Clerk will **CLOSE** this case and all pending motions will be **DENIED as moot**.

**DONE AND ORDERED** in Chambers, Miami, Florida, this 28th day of September 2021.

Marcia G. Cooke

MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Jonathan Goodman, U.S. Magistrate Judge*
*Counsel of record*